*U.S. Department of Justice*

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

May 9, 2008

**BY ECF**

The Honorable Alvin K. Hellerstein
United States District Judge
Southern District of New York
Daniel Patrick Moynihan U.S. Courthouse
500 Pearl Street, Room 640
New York, New York 10007

      Re:    United States v. Benjamin Vializ
                  08 Cr. 0009 (AKH)

Dear Judge Hellerstein:

      The Government respectfully submits this letter in response to defendant Benjamin Vializ's motion to suppress physical evidence and statements obtained by officers of the New York City Police Department ("NYPD") in connection with his October 30, 2007 arrest for being a felon in possession of a firearm. The defendant argues that the police did not have probable cause to arrest him because he did not place the firearm he is charged with possessing into the trash can from which it was retrieved. The defendant, therefore, moves to suppress evidence and statements obtained from him during his arrest. While it is unclear whether the defendant is moving to suppress the firearm itself, such a motion would have to be denied without a hearing for reasons set forth below. In light of the defendant's affirmation in support of his motion, in which he disputes several key events that took place prior to his arrest, the Government consents to an evidentiary hearing concerning suppression of (i) evidence recovered from the defendant's person and (ii) the defendant's post-arrest statements.[1] The Court has set May 22, 2008 as the

---

[1]     The Government's consent is conditioned on the defendant filing a signed version of his Affidavit before the hearing. The defendant's Affidavit was submitted with an "s/" typed in the space where the signature would otherwise appear. While such a signature would be appropriate under certain conditions, *see* Southern District of New York Procedures for Electronic Case Filing ¶ 8(a), a document "requiring the signature of a defendant in a criminal case may be electronically filed only in a scanned format that contains an image of the defendant's signature." Southern District of New York Procedures for Electronic Case Filing ¶ 8(c). Accordingly, the defendant is entitled to a hearing on his suppression motion only if he files a properly signed affidavit prior to the hearing. *See United States v. Barrios*, 2007 WL 2962371, at *1 (S.D.N.Y. Oct. 10, 2007) (Cote, J.) (granting a hearing on the defendant's suppression motion only on the condition that he must submit a signed affidavit before the hearing).

The Honorable Alvin K. Hellerstein
May 9, 2008
Page 2 of 5

date for a hearing on this motion.  The Government may request post-hearing briefing regarding the factual and legal issues that arise during the hearing, if necessary.

**BACKGROUND**

The defendant is charged in a one-count Indictment with being a felon in possession of a firearm, in violation of Title 18, United States Code, Section 922(g)(1).  (A copy of the Indictment is attached as Exhibit A.)   The background of this case is set forth in the Complaint filed on December 6, 2007.  (A copy of the Complaint is attached as Exhibit B.)

The Government expects the evidence to show that on October 30, 2007, at approximately 11:30 p.m., an officer ("Officer 1") saw three males running near the intersection of Brook Avenue and East 142nd Street in the Bronx.  One of the males, subsequently identified as Benjamin Vializ, the defendant, was wearing an orange hat.  Earlier that evening, Officer 1 had received an NYPD radio transmission stating that someone had reported that three males had been robbing people in that vicinity and one had worn an orange hat.  At the time that Officer 1 saw the defendant and the two other males, a marked police vehicle was on the same block.  Two officers ("Officer 2" and "Officer 3")  were riding in that vehicle.  Officer 1 then saw Vializ toss an object with some visible metallic surface that appeared to be wrapped in a dark cloth into a garbage can.  Officer 1 then approached Vializ and told him to "hold up," at which point Vializ stopped.  At approximately that time, Officer 1 saw an unmarked police vehicle near the intersection of Brook Avenue and East 142nd Street.  (Compl. ¶ 2(a).)

The Government also expects the evidence to show that Officer 1 walked over to the garbage can in which he had observed Vializ throw an object.  An officer ("Officer 4") who had arrived in the unmarked vehicle also approached the garbage can.  Officer 4 reached into the garbage can and pulled out a handgun, subsequently identified as a Raven Arms semi-automatic handgun, wrapped in a black bandana.  No other items were found in that garbage can, which was otherwise empty.  (Compl. ¶ 2(b).)

Vializ was arrested.  (Compl. ¶ 2(c).)  He was searched incident to his arrest.  Recovered from his person were a black and white bandana, a cell phone and battery, and a cell phone holder.  After his arrest, he made several statements that were not made in response to any questions posed by police officers, including the following: "I ruined my life;" "My life is over;" "You guys ruined my life;" "I can't believe this happened to me;" and "It was the little one."

The day after his arrest, Vializ made statements to police officers after agreeing, orally and in writing,  to waive his *Miranda* rights. (Compl. ¶ 3.)  Vializ stated that he knew the two kids, Luigi and Julio, from the area and that they were having trouble with some other kids from the area. (Compl. ¶ 3(a).)  Vializ further stated that Luigi noticed police and stated to Vializ, "I'm hot!  I'm leaving!" (*Id.*) According to Vializ, he then saw Luigi and Julio observe a second police car and saw Luigi run toward a garbage can and throw something in it. (*Id.*) Vializ denied running shortly before he was arrested. (Compl. ¶ 3(b).)

Vializ asserts in his Affidavit that on the evening of October 30, 2007, he exited an apartment building and saw two kids he knew from the area, who asked him several questions and then started  running in the direction of, and passing, a garbage container on the side of a building. (Vializ Aff. ¶ 3.)  According to Vializ, he never got closer than 100 feet from the garbage container in which the firearm was discovered.  (Vializ Aff. ¶ 5.)

The Honorable Alvin K. Hellerstein
May 9, 2008
Page 3 of 5

### SCOPE OF HEARING

The defendant has not alleged any facts that suggest a basis for suppressing the firearm that was recovered in the garbage can. It is unclear from his motion papers whether the defendant intended to move for suppression of the firearm, but based on the allegations in the defendant's Affidavit, there is no basis for suppression. "A criminal defendant only has standing to bring a motion to suppress evidence if he has a possessory interest in the evidence he is seeking to suppress." *Guzman v. Sabourin*, 124 F.Supp.2d 828, 834 (S.D.N.Y. 2000) (defendant not entitled to hearing on suppression of box-cutter found on the ground several feet from the defendant because defendant did not allege possession); *see also United States v. Osorio*, 949 F.2d 38, 40 (2d Cir. 1991) ("The party moving to suppress bears the burden of proving that his own Fourth Amendment rights were violated by the challenged search or seizure."). The defendant is not entitled to a suppression hearing concerning the seizure of the firearm he is charged with possessing, because he does not claim that he possessed it.[2] *See id.* The defendant does admit ownership of the items removed from his person following his arrest, and therefore properly raises a suppression issue as to those times. The defendant has not alleged any facts suggesting that his post-arrest statements were made involuntarily, or that his waiver of *Miranda* rights was not knowing and voluntary. The defendant's only stated basis for moving to suppress his post-arrest statements is his assertion that the officers lacked probable cause to arrest him. Accordingly, the scope of the suppression hearing should be limited to whether Vializ's arrest was supported by probable cause, and whether the subsequent recovery of items from the defendant's person was a proper search incident to arrest.

### APPLICABLE LAW

The Fourth Amendment protects individuals against "unreasonable searches and seizures." U.S. Const. amend. IV. In the context of this case, the applicable law concerns whether the warrantless arrest of the defendant was an unreasonable seizure.

1. The Warrantless Arrest

A warrantless arrest such as the one in this case is fully justified if there is "probable cause when the defendant is put under arrest to believe that an offense has been or is being committed." *United States* v. *Cruz*, 834 F.2d 47, 50 (2d Cir. 1987). Probable cause exists "if the law enforcement official, on the basis of the totality of the circumstances, has sufficient knowledge or reasonably trustworthy information to justify a person of reasonable caution in believing that an offense has been or is being committed by the person to be arrested." *United States* v. *Patrick*, 899 F.2d 169, 171 (2d Cir. 1990) (citing, *inter alia*, *Brinegar* v. *United States*, 338 U.S. 160, 175-76 (1949), and *Illinois* v. *Gates*, 462 U.S. 213, 230-32 (1983)).

Probable cause is a "commonsense, nontechnical" concept that is determined by "the factual and practical considerations of everyday life on which reasonable and prudent men, not

---

[2] In any case, regardless of whether the defendant ever had a possessory interest in the recovered firearm, leaving it in a garbage can on a public street forfeits any reasonable expectation of privacy in that property. *See California v. Greenwood*, 486 U.S. 35, 39-41 (1988) (warrantless seizure of trash bag deposited at curbside for collection valid because trash left in public view and accessible to public, thus negating reasonable expectation of privacy in it).

The Honorable Alvin K. Hellerstein
May 9, 2008
Page 4 of 5

legal technicians, act." *Ornelas* v. *United States*, 517 U.S. 690, 695 (1996) (quotation omitted). As the Supreme Court explained in *Gates*:

> The process [of determining probable cause] does not deal with hard certainties, but with probabilities. Long before the law of probabilities was articulated as such, practical people formulated certain common-sense conclusions about human behavior; jurors as factfinders are permitted to do the same — and so are law enforcement officers. Finally, the evidence thus collected must be seen and weighed not in terms of library analysis by scholars, but as understood by those versed in the field of law enforcement.

462 U.S. at 231-32 (quotation omitted). As a result, "it is clear that only the probability, and not a *prima facie* showing, of criminal activity is the standard of probable cause." *Id.* at 235 (quotation omitted); *see also Maryland* v. *Pringle*, 540 U.S. 366, 370 (2003) ("The probable cause standard is incapable of precise definition or quantification into percentages because it deals with probabilities . . . . We have stated . . . that [t]he substance of all the definitions of probable cause is a reasonable ground for belief of guilt.") (internal quotation marks and citations omitted); *Hill* v. *California*, 401 U.S. 797, 804 (1971) ("[S]ufficient probability, not certainty, is the touchstone of reasonableness under the Fourth Amendment."); *United States* v. *Cruz*, 834 F.2d at 50 (to establish probable cause, "it is not necessary to make a prima facie showing of criminal activity or to demonstrate that it is more probable than not that a crime has been or is being committed") (quotation omitted).

The presence or absence of probable cause must be determined from the totality of the circumstances. *See Gates*, 462 U.S. at 238. That determination is inherently fact-specific, and does not lend itself to the formulation or application of specific rules or tests. Thus, the Second Circuit has explained that "[p]robable cause is a flexible term. There is no rigid demand that specific tests be satisfied." *Tenenbaum* v. *Williams*, 193 F.3d 581, 603 (2d Cir. 1999) (quotations omitted). Moreover, the information known to the officers at the time need not appear sufficient to support a conviction, or even be admissible in court. *See Adams* v. *Williams*, 407 U.S. 143, 149 (1972) ("Probable cause does not require the same type of specific evidence of each element of the offense as would be needed to support a conviction. Rather, the court will evaluate generally the circumstances at the time of the arrest to decide if the officer had probable cause for his action.").

Moreover, "[p]robable cause issues are to be decided on an objective basis by courts without regard to the subjective beliefs of law enforcement officers, whatever those beliefs may have been." *Craig* v. *Singletary*, 127 F.3d 1030, 1042 (11th Cir. 1997) (en banc); *see also United States* v. *Scopo*, 19 F.3d 777, 783-85 (2d Cir. 1994) (analysis of Fourth Amendment issues involves "'an objective assessment of the officer's actions in light of the facts and circumstances confronting him at the time' and not on the officer's actual state of mind at the time the challenged action was taken.") (citations omitted); *United States* v. *Ochs*, 595 F.2d 1247, 1256 (2d Cir. 1979) ("[T]he test is what could lawfully be done, not what the policemen thought the source of their power to be."). Thus, as the Second Circuit explained in *Scopo*, so long as the arresting officer had probable cause to believe an offense was being committed, and "was

The Honorable Alvin K. Hellerstein
May 9, 2008
Page 5 of 5

authorized by state or municipal law to effect a custodial arrest for the particular offense, the resulting arrest will not violate the fourth amendment." 19 F.3d at 784.

### 2. Search Incident to Arrest

It is well-established that a lawful search incident to an arrest may include a "search of the arrestee's person and the area 'within his immediate control,'" which has been construed to mean "the area from which he might gain possession of a weapon or destructible evidence." *Chimel v. California*, 395 U.S. 752, 762-63 (1969); *see also United States v. Hernandez*, 941 F.2d 133 (2d Cir. 1991).

### CONCLUSION

For the foregoing reasons, the Government consents to an evidentiary hearing concerning suppression of evidence recovered from the defendant's person and the defendant's post-arrest statements. The Government respectfully reserves the right to request post-hearing briefing regarding the factual and legal issues that arise during the hearing, if necessary.

Respectfully submitted,

MICHAEL J. GARCIA
United States Attorney

By:   s/ Jeff Alberts
      Jeff Alberts
      Assistant United States Attorney
      (212) 637-1038

cc:   Alan Seidler, Esq.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA      :   INDICTMENT

    - v. -                      **08 CRIM 009**

BENJAMIN VIALIZ,              :

        Defendant.           :

- - - - - - - - - - - - - - - - - x

### COUNT ONE

The Grand Jury charges:

On or about October 30, 2007, in the Southern District of New York and elsewhere, BENJAMIN VIALIZ, the defendant, after having been convicted in a court of a crime punishable by imprisonment for a term exceeding one year, to wit, a conviction on or about August 8, 2001, in New York Supreme Court, New York County, of criminal possession of a controlled substance in the fifth degree, a violation of New York Penal Law 220.06(01), a Class D felony, unlawfully, willfully, and knowingly, did possess in and affecting commerce, a firearm, to wit, a Raven Arms semi-automatic handgun, which previously had been shipped and transported in interstate and foreign commerce.

(Title 18, United States Code, Section 922(g)(1).)

_____            _____
FOREPERSON                         MICHAEL J. GARCIA
                                         United States Attorney

07 MAG 2073

Approved: _____
          JEFF ALBERTS
          Assistant United States Attorney

Before:   HONORABLE FRANK MAAS
          United States Magistrate Judge
          Southern District of New York

- - - - - - - - - - - - - - - - - - -x

UNITED STATES OF AMERICA              :    SEALED COMPLAINT

          - v. -                      :    Violation of
                                           18 U.S.C. § 922(g)(1)
BENJAMIN VIALIZ,                      :
                                           COUNTY OF OFFENSE:
          Defendant.                  :    BRONX

                                      :

- - - - - - - - - - - - - - - - - - -x

SOUTHERN DISTRICT OF NEW YORK, ss.:

          JOHN MIATA, being duly sworn, deposes and says that he is a Police Officer with the New York City Police Department ("NYPD"), Firearms Suppression Division, and he charges as follows:

                            Count One

          On or about October 30, 2007, in the Southern District of New York and elsewhere, BENJAMIN VIALIZ, the defendant, after having been convicted in a court of a crime punishable by imprisonment for a term exceeding one year, to wit, a conviction on or about August 8, 2001, in New York Supreme Court, New York County, of criminal possession of a controlled substance in the fifth degree, a violation of New York Penal Law 220.06(01), a Class D felony, unlawfully, willfully, and knowingly, did possess in and affecting commerce, a firearm, to wit, a Raven Arms semi-automatic handgun, which previously had been shipped and transported in interstate and foreign commerce.

          (Title 18, United States Code, Section 922(g)(1).)

          The bases for my knowledge and for the foregoing charge, is, in part, as follows:

          1.    I am a Police Officer in the Firearms Suppression Division of the New York City Police Department ("NYPD"), and I have been personally involved in the investigation of this matter. This Affidavit is based upon my

personal participation in the investigation, my examination of reports and records, and my conversations with other law enforcement officers. Because this Affidavit is being submitted for the limited purpose of demonstrating probable cause, it does not include all the facts that I have learned during the course of my investigation. Where the contents of documents and the actions, statements, and conversations of others are reported herein, they are reported in substance and in part, except where otherwise indicated.

    2. I have spoken with an officer of the NYPD ("Officer 1"), who informed me, in substance and in part, of the following:

    a. On or about October 30, 2007, at approximately 11:30 p.m., Officer 1 saw three males running South on Brook Avenue toward East 142nd street in the Bronx. One of the males, subsequently identified as BENJAMIN VIALIZ, the defendant, was wearing an orange hat. Earlier that evening, Officer 1 had received an NYPD radio transmission stating that someone had reported that three males had been robbing people in that vicinity and one had worn an orange hat. A marked police vehicle was on the same block as Officer 1 ("Police Vehicle 1"). Two officers were riding in Police Vehicle 1 ("Officer 2 and Officer 3"). Officer 1 then saw VIALIZ toss an object with some visible metallic surface that appeared to be wrapped in a dark cloth into a garbage can. Officer 1 then approached VIALIZ and told him to "hold up," at which point VIALIZ stopped. At approximately that time, Officer 1 saw an unmarked police vehicle ("Police Vehicle 2") traveling in the same direction that VIALIZ and the two other males had been running on Brook Avenue.

    b. Officers 2 and 3 then stopped the two males who had been running near VIALIZ. Officer 1 walked over to the garbage can in which he had observed VIALIZ throw an object. He was accompanied by an officer who had exited Police Vehicle 2 ("Officer 4"). Officer 4 reached into the garbage can and pulled out a handgun, subsequently identified as a Raven Arms semi-automatic handgun, wrapped in a black bandana. No other items were found in that garbage can, which was otherwise empty

    c. Officer 1 then detained VIALIZ and took him to the 40th Police Precinct in the Bronx.

    3. On or about October 31, 2007, after orally and in writing agreeing to waive his <u>Miranda</u> rights, BENJAMIN VIALIZ, the defendant, spoke to me about this offense. VIALIZ stated both orally and in writing, in substance and in part, the

following:

        a.    Shortly before he was arrested on October 30, 2007, VIALIZ was with two "kids", Luigi and Julio, who he knew from the area. These kids were having trouble with some other local kids. Luigi noticed police and stated to VIALIZ, "I'm hot! I'm leaving!" As Luigi and Julio started to leave, they observed a second police car and then started running. Luigi then ran toward a garbage can and threw something inside it.

        b.    VIALIZ himself did not run shortly before he was arrested.

        4.    After consultation with an ATF agent knowledgeable about the manufacture of firearms, I have confirmed that Raven Arms - the manufacturer of the weapon at issue here - has never manufactured firearms within the State of New York.

        5.    I have reviewed criminal history records pertaining to BENJAMIN VIALIZ, the defendant, which reflect that VIALIZ was convicted on or about on or about August 8, 2001, in New York Supreme Court, New York County, of criminal possession of a controlled substance in the fifth degree, a violation of New York Penal Law 220.06(01), a Class D felony

    WHEREFORE, deponent respectfully requests that a warrant be issued for the arrest of BENJAMIN VIALIZ, the defendant, and that he be arrested and imprisoned, or bailed, as the case may be.

DEC 0 6 2007

JOHN M\_\_\_\_
Police Officer
New York Police Department

Sworn to before me this
    day of December, 2007

_____
HONORABLE FRANK MAAS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF NEW YORK